UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------x

GERRY GALIANO, GARY KROMER,                        :
MONIQUE KROMER, JOSEPH AMMIRATI,                   :
MICHELLE AMMIRATI, SUSAN M. MAROTTA                :
PETER MILEY, VINCENT TRULLI, JR., STEPHEN J.       :
PHELAN, and MARTIN MARTINUCCI, on behalf           :
of themselves and those similarly situated,        :
                                                   :
                        Plaintiffs,                :
          v.                                       : Case Nos.:
                                                   :
FIDELITY NATIONAL TITLE INSURANCE                  : 08 Civ. 01317-KMK;
COMPANY, CHICAGO TITLE INSURANCE                   : 08 Civ. 01494-KMK;
COMPANY, TICOR TITLE INSURANCE COMPANY,            : 08 Civ. 01597-KMK;
FIDELITY NATIONAL FINANCE, INC., FIRST             : 08 Civ. 01547-KMK;
AMERICAN TITLE INSURANCE COMPANY OF                : 08 Civ. 01729-KMK; and
NEW YORK, UNITED GENERAL TITLE INSURANCE           : 08 Civ. 01644-KMK
COMPANY, FIRST AMERICAN CORPORATION,               :
COMMONWEALTH LAND TITLE INSURANCE                  : **ECF CASE**
COMPANY, LAWYERS TITLE INSURANCE                   :
CORPORATION, LANDAMERICA FINANCIAL                 :
GROUP, INC., STEWART TITLE INSURANCE               :
COMPANY, MONROE TITLE INSURANCE                    :
CORPORATION, STEWART INFORMATION SERVICE           :
CORPORATION, AND TITLE INSURANCE RATE              :
SERVICE ASSOCIATION, INC.,                         :
                        Defendants.                :
------------------------------------------------------------x

## FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Pursuant to the agreement of counsel set forth in a July 3, 2007 Stipulation Regarding

Consolidation and Rule 12 Motions, Plaintiffs, by their undersigned counsel, on behalf of

themselves and all other similarly situated individuals, upon knowledge with respect to their own

acts and upon information and belief with respect to all other matters, allege as follows:

## SUMMARY OF CLAIMS

1.      This case involves an illegal price-fixing agreement to collectively set the rates that consumers pay for title insurance and kickbacks and other payments prohibited by the Real Estate Settlement Procedures Act of 1974 and other state laws.  Since 1991, Defendants have conspired to hide unlawful kickback arrangements from the New York Department of Insurance in an effort to artificially inflate the amounts New Yorkers pay for title insurance.

2.      Title insurance rates may be collectively set by a rate setting organization comprised of the state's title insurers.  Defendants (along with other title insurers) formed Title Insurance Rate Service Association, Inc. ("TIRSA") in 1991.  TIRSA collects financial information from Defendants and its other title insurer members and submits this information in aggregate form along with its rates to the New York Insurance Department ("Insurance Department").  Under this system, Defendants have charged their collectively fixed rates to consumers since 1991.

3.      Defendants have made it impossible for the Insurance Department to regulate the rates being imposed because the rates are based on costs that the Insurance Department has no ability to assess and over which it has no regulatory authority.  These costs are referred to as "agency commissions" in the industry.  These costs chiefly cover kickbacks and other costs paid in violation of N.Y. Ins. Law § 6409(d) that are unrelated to the issuance of title insurance.  By their scheme and conspiracy in restraint of trade, Defendants hid the true nature of these agency commissions from the Insurance Department in an effort to inflate their overall revenues.  The Insurance Department does not have jurisdiction over title agents.

4.      Although the Insurance Department authorizes collective rate setting activity generally, Defendants have acted collusively through TIRSA to thwart this oversight.  By

embedding these supposed costs within the agency commissions paid to unregulated title agents, Defendants have thwarted regulatory review by the Insurance Department. As these payments account for approximately 85 percent of the total costs that comprise TIRSA's rate submission, Defendants have collusively inflated their rates and have prevented the Insurance Department from doing anything to regulate it or otherwise detect their conduct.

5.      Through this anticompetitive behavior, Defendants have successfully fixed and maintained title insurance rates in New York at supracompetitive levels. These rates -- often several thousand dollars per transaction -- bear no relationship to the actual costs of indemnity risk.

6.      With respect to title insurance secured in connection with federally related mortgage loans, Defendants paid illegal kickbacks, fees and other things of value to title agents in exchange for referrals and engaged in prohibited fee splitting in the form of payment of agent commissions that were not for services actually performed under the Real Estate Settlement Practices Act of 1974 ("RESPA").

7.      Further, the acts of Defendants as alleged herein constitute deceptive acts and practices in violation of New York General Business Law § 349 ("GBL § 349").

8.      Insofar as Defendants have benefitted from their unjust and inequitable practices as alleged herein, the Court should impose a constructive trust over that portion of Defendants' assets which represents such enrichment improperly obtained at Plaintiffs' and the absent members of the classes' expense.

9.      Plaintiffs, on behalf of themselves and four classes of all similarly situated title insurance purchasers described below, bring this action: (1) under § 1 of the Sherman Act to enjoin Defendants' illegal behavior and recover treble damages and costs of this suit as a result

of the illegal overcharges they have paid; (2) under RESPA, 12 U.S.C. §§ 2607(a) & (b), and applicable U.S. Department of Housing and Urban Development regulations promulgated thereunder, to recoup the fees paid to title agents that were not "for services actually performed" or which were improperly paid for making referrals; (3) under GBL § 349 for actual or statutory damages and attorneys fees; and (4) under the New York common law of unjust enrichment for imposition of a constructive trust over that portion of Defendants' profits which were improperly obtained at their expense.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1337(a), 1331, 1357 & 12 U.S.C. § 2614, because plaintiffs allege violations of federal statutes including the Sherman Act and RESPA. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Venue is proper in this judicial district under 15 U.S.C. § 22 because Defendants are corporations that transact business herein. Venue is also proper in this judicial district under 28 U.S.C. §§ 1391(b)(2) & (b)(3) because a substantial part of the events and omissions giving rise to the claims alleged herein took place in this judicial district and Defendant TIRSA resides herein.

12.    The violations of antitrust law and RESPA alleged herein have substantially affected interstate commerce. Defendants sell title insurance throughout the United States collecting billions dollars in premiums annually.

## THE PARTIES

**A.     Plaintiffs**

13.     Gerry Galiano is a natural person residing in Briarcliff Manor, New York.  On January 5, 2008, Mr. Galiano purchased title insurance from Defendant Stewart Title Insurance Company ("Stewart Title") in connection with his purchase of a property located in Briarcliff Manor, New York.  Mr. Galiano paid $3,380 for the insurance.

14.     Gary Kromer and Monique Kromer (the "Kromers") are natural persons residing in Wantaugh, New York.  On December 6, 2007, the Kromers purchased title insurance from Defendant Fidelity National Finance, Inc. ("Fidelity National") in connection with their purchase of a property located in Wantaugh, New York.  The Kromers paid $1,771.00 for the insurance.

15.     Joseph Ammirati and Michelle Ammirati (the "Ammiratis") are natural persons residing in Huntington, New York.  On December 10, 2007, the Ammiratis purchased title insurance from Defendant First American Title Insurance Company of New York ("First American Title") in connection with their purchase of a property located in Huntington, New York.  The Ammiratis paid $2,929.00 for the insurance.

16.     Susan M. Marotta is a natural person residing in Somers, New York.  On December 27, 2007, Ms. Marotta purchased title insurance from Defendant Fidelity National in connection with her purchase of a property located in Somers, New York.  Ms. Marotta paid $3,953.00 for the insurance.

17.     Peter Miley is a natural person residing in Yorktown Heights, New York.  On September 1, 2005, Mr. Miley purchased title insurance from Defendant Fidelity National in connection with his purchase of a property located in Yorktown Heights, New York.  Mr. Miley paid $2,038.00 for the insurance.

18.     Vincent Trulli, Jr. is a natural person residing in New Rochelle, New York. On July 12, 2007, Mr. Trulli purchased title insurance from Defendant First American Title in connection with his purchase of a property located in New Rochelle, New York. Mr. Trulli paid $1,835.00 for the insurance. Upon information and belief, this title insurance premium was split with Direct Title Abstract, LLC and possibly others.

19.     Michael Martinucci is a natural person residing in Tarrytown, New York. On August 20, 2006, Mr. Martinucci purchased title insurance from Defendant Fidelity National in connection with his purchase of a property located in Tarrytown, New York. Mr. Martinucci paid $2,606.40 for the insurance.

20.     Stephen J. Phelan is a natural person currently residing in Connecticut. On May 1, 2006, Mr. Phelan, then a resident of New York, purchased title insurance from Defendant Chicago Title Insurance Company ("Chicago Title") in connection with his purchase of a property located in Albany, New York. Mr. Phelan paid $2,328.00 for the insurance.

**B.     Defendants**

21.     Defendant Chicago Title Insurance Company ("Chicago Title") and Ticor Title Insurance Company ("Ticor Title"), are associated title insurance companies referred to as the Fidelity family of title insurance companies (collectively, "Fidelity Title"). Fidelity is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including New York. Fidelity Title, Chicago Title, and Ticor Title were founding members of Defendant TIRSA and since TIRSA's inception have charged title insurance rates in New York that TIRSA collectively sets. Fidelity Title, Chicago Title, Ticor Title and their affiliates are wholly-owned and controlled by Defendant Fidelity National, a Delaware

corporation headquartered in Jacksonville, Florida. Fidelity Title engaged in the conduct challenged herein with the knowledge and approval of Fidelity National.

22.    Defendant First American Title and Defendant United General Title Insurance Company ("United General"), are associated title insurance companies referred to as the First American Family of title insurance companies (collectively "First American"). First American is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including New York. First American Title, United General, and their affiliates are wholly-owned and controlled by Defendant First American Corporation ("FAC"), a California corporation headquartered in Santa Ana, California. Through its subsidiaries, FAC is a provider of title insurance, business information, and related products and services. First American engaged in the conduct challenged herein with the knowledge and approval of FAC.

23.    Defendant Commonwealth Land Title Insurance Company ("Commonwealth") and Defendant Lawyers Title Insurance Corporation ("Lawyers Title") are associated title insurance companies referred to as the LandAmerica family of title insurance companies (collectively, "LandAmerica"). LandAmerica is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including New York.

24.    Commonwealth and Lawyers Title are wholly-owned and controlled by Defendant LandAmerica Financial Group, Inc. ("LAFG"), a Virginia corporation. LandAmerica engaged in the conduct challenged herein with the knowledge and approval of LAFG.

25.    Defendant Stewart Title Insurance Company ("Stewart Title") and Defendant Monroe Title Insurance Corporation ("Monroe Title") are associated title insurance companies referred to as the Stewart family of title insurance companies (collectively, "Stewart"). Stewart

is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including New York.

26.    Stewart Title and Monroe Title are wholly-owned and controlled by Defendant Stewart Information Services Corporation ("SISC"), a Delaware corporation headquartered in Houston, Texas. Stewart engaged in the conduct challenged herein with the knowledge and approval of SISC.

27.    Defendant Title Insurance Rate Service Association, Inc. ("TIRSA") is an association of title insurers licensed by the Superintendent of Insurance of the State of New York as a rate service organization. TIRSA maintains its offices this judicial district in New York City.

28.    TIRSA annually compiles statistical data from its members relating to their title insurance premiums, losses and expenses and submits this information in aggregate form to the New York Insurance Department. TIRSA's membership is comprised of Defendant insurers and all other title insurers that are licensed to issue policies in New York. TIRSA also prepares and submits the New York Title Insurance Rate Manual which sets forth title rates to be charged and rules to be followed by TIRSA's members.

29.    Defendants Chicago Title, Ticor Title Fidelity Title, Fidelity National, United General Title, First American, FAC, Commonwealth, Lawyers Title, LandAmerica, LAFG, Stewart Title, Monroe Title, Stewart, SISC, and TIRSA are collectively refereed to herein as "Defendants."

## BACKGROUND

**A.    Title Insurance In New York**

30.    Title insurance is one of the most costly items associated with the closing of a real

estate transaction. In New York, TIRSA's collectively fixed rates for title insurance are based on a percentage of the total value of the property being insured. For residential properties, this price ranges from about $1,800 to $3,700. For more expensive homes and commercial properties, these prices are significantly higher and can reach the tens of thousands of dollars. In 2006, the 27 title insurers licensed in the State of New York charged approximately $1.2 billion on premiums to insure New York homes.

31.    In New York, title insurance is required by residential and commercial real estate lenders. Title insurance protects the real estate purchaser and, in turn, the lenders' agents from any unidentified defects in the title that would in any way interfere with the full and complete ownership and use of the property and with the ultimate right to resell the property.

32.    Title insurers get business by encouraging those making the purchasing decisions – the lawyers, brokers, lenders – to direct business to that insurer. The best way to encourage these third-party representatives is not to offer lower prices (that they do not pay), but through other financial inducements. Hence, higher pricing, not lower pricing, gives title insurers the most room to compete for business.

33.    This perverse form of competition, coupled with the particular vulnerability of most residential title insurance consumers and the opacity of the loan closing process, is the reason why most states regulate the industry. However, New York is only one of a few jurisdictions in which title insurers collectively fix their prices through a rate-setting organization. New York also may be the only state in which these rates include "agency commissions" that are neither authorized nor regulated.

34.    There are two principal cost components that go into TIRSA's rate calculation. One is the cost of insuring the risk associated with issuing the title policy. The other is "agency

commissions" paid to title agents.

35.     The underwriting portion of the rate accounts for the risk the title insurer bears for any undiscovered clouds on title to property. Unlike more conventional insurance products, title insurance carries a very limited risk of loss for the insurer. The minimal risk exists in large part because title insurance protects against *prior* events that cause defects to title. If a proper search and examination of ownership records is performed, these defects are uncovered and are almost always excluded from the policy's coverage. Consequently, the average claim payout on title insurance policies is extremely low – only about 5 percent of the total premium collected. By contrast, the claim payout rate for property and casualty policies that protect against *future* losses an insurer cannot control is about 80 percent of the total premium.

36.     The "agency commissions" component of the title insurance rate covers payments made to title agents. Defendants have an ownership or management interest in many of the title agencies to which these payments are made. A small portion of these payments is for the search and exam of prior ownership records of the property being purchased to identify any liens, encumbrances, burdens, exclusions, or other defects in the title. The search and exam function does not involve the spreading or underwriting of risk and title insurers typically outsource this task to title agents.

37.     The remainder – and vast majority – of agency commissions are comprised of costs unrelated to the issuance of title insurance. These costs include kickbacks, fee splitting and other illegal financial inducements title insurers provide to title agents and indirectly to the lawyers, brokers, and lenders who decide which title insurer to select. These payments have nothing to do with the business of title insurance and are made by title insurers solely to inflate their revenues.

38.    Under TIRSA's collective rate setting regime, roughly 85 percent of total title insurance premiums are based on the often illegitimate costs associated with the payment of agency commissions. Only approximately 15 percent are based on costs associated with the risk of loss. Of this 15 percent, title insurance companies only pay out approximately 3 percent in claims for all of their policies. The remaining 12 percent is pure revenue to the insurers.

39.    TIRSA publishes its final calculated title rates in the New York Title Insurance Rate Manual. These rates are tied to the value of the property being insured notwithstanding that the costs associated with agency commissions are unrelated to the value of the property. Indeed, agency kickbacks, fee splitting and enticements have little to do with the costs of securing a particular title policy and result in no value to the property owner. Instead the costs fluctuate based solely on the age of the property, the complexity of the ownership history, and the accessibility of prior ownership records.

**B.    TIRSA's Formation**

40.    Prior to TIRSA, the New York Board of Title Underwriters ("NYBTU") served as the title insurance rate-setting body in New York. NYBTU, along with the title insurance rate setting bureaus in many other states, was disbanded in the mid-1980s in the wake of a Federal Trade Commission ("FTC") challenge to the collective rate setting activity of many of these associations. The FTC challenge culminated in *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992), where the Supreme Court held that to avoid *per se* illegal price fixing liability, the rate setting activity of these rating bureaus must be actively supervised by the state.

41.    In *Ticor*, the FTC centered its challenge on agency commissions. The FTC contended that the respective state insurance departments merely rubber-stamped this portion of the collectively fixed rates without any independent review or analysis of their reasonableness or

cost justification. The Supreme Court concluded that to avoid illegal price-fixing liability, the state insurance department has to "exercise[] sufficient independent judgment and control so that the details of the rates or prices have been established as a product of deliberate state intervention, not simply by agreement among private parties." *Ticor*, 504 U.S. at 634-35.

42.     Defendants formulated TIRSA's first rate manual and procedure soon after the Supreme Court's *Ticor* decision. Through TIRSA, Defendants have set up a rate-setting scheme to circumvent the rigors of state oversight required by *Ticor*. They have done so by computing a single rate that includes both risk and agency commission costs and by outsourcing agency commission costs to title agents. As a result, Defendants are able to avoid providing the Insurance Department with any justification for the costs that make up their collectively fixed rates.

43.     TIRSA submits an aggregate figure that is supposed to represent total agency commission costs. Embedded within this figure is the large quantity of dollars that are funneled to and through the title agencies as kickbacks, fee splitting, financial inducements and other costs unrelated to the issuance of title insurance. Through this practice, Defendants mask the cost basis for their artificially high and collectively fixed title insurance premiums from the regulatory scrutiny that *Ticor* requires in order to secure antitrust immunity.

44.     The Insurance Law does not permit TIRSA to include unlawful remuneration and other agency commission payments that do not relate to the title insurance rate setting process in its rate submissions. The Insurance Department has acknowledged that it lacks the authority to review any such payments and has discovered that Defendants' submission of these agency commission costs has prevented it from performing a meaningful review of TIRSA's calculated rates. During a November 3, 2006 public hearing, the Insurance Department criticized TIRSA,

and its members, on TIRSA's failure to provide the Insurance Department with any backup or detail for agency commissions.

45.     During questioning at the hearing, David Sidikman, the Executive Director of TIRSA admitted that TIRSA does not know what the agency commission costs it submits to the Insurance Department actually cover:

> **Q.**     . . . you've also testified that your members really don't know what the title agents are doing with the money that they're getting, in other words, they give them 85 percent and as far as they know they have no input or no knowledge of what's being done with the money, I just want to make sure, is that correct?
>
> **A.**     I have no way of knowing . . . what [the title agents'] expenses are, what their overheads are, what they pay in salaries, what they pay in administrative costs, what they pay in rent and what they pay with every other aspect of their overhead, I have no way of knowing that.
>
> \*     \*     \*
>
> **Q.**     . . . a large portion of the data represents revenue and expenses that are outside the control of the [insurer] and outside of the control of TIRSA and you have no specific knowledge as to how those dollars are being expended, as you just said?
>
> **A.**     That's correct.

46.     Mr. Sidikman further testified that TIRSA does not know the actual search and exam costs incurred by title agents on behalf of the TIRSA's members:

> **Q.**     What are the actual costs to title insurers to the agents to do the necessary searches and all the other things that they need to do in connection with a title search?
>
> **A.**     We do not get the agents' statistics because that is between the [insurer] and the agent.

47.     From this and other testimony at the hearing, the Insurance Department conceded that it could not properly evaluate TIRSA's calculated rates, and that it could only do so if it

obtained the detailed cost information on agency commissions that TIRSA does not provide.

48.    The Insurance Department's recognition that it is not properly supervising TIRSA's rate-setting activity is consistent with the April 2007 findings of the U.S. Government Accountability Office ("GAO") that the title insurance industry is in need of greater state regulation. The GAO studied the industry conditions of several states, including New York, and concluded that "state regulators have not collected the type of data, *primarily on title agents' costs and operations*, needed to analyze premium prices and underlying costs" (emphasis added).

**C.    Defendants' Inflated Rates and Excess Profits**

49.    At the time of TIRSA's formation, the Insurance Department set limits in the industry of 5 percent as the profit margin for title insurers. Through their anticompetitive behavior, Defendants have vastly exceeded this limitation, because, for the reasons set forth above, the Insurance Department has been unable to perform its assigned oversight function.

## INTERSTATE COMMERCE

50.    At all times relevant hereto, Defendants and each of them conducted business across state lines in interstate commerce.

## ANTICOMPETITIVE CONDUCT

51.    Defendants are competitors in the sale of title insurance to consumers in New York. Through TIRSA, these title insurers have agreed and engaged in concerted efforts to: (1) collectively set and charge uniform and supracompetitive rates for title insurance in New York, (2) include in their calculated rates agency commission costs; (3) hide payoffs, kickbacks, and other illegal charges that are unrelated to the issuance of title insurance within these costs,

and (4) protect these sham "costs" from regulatory scrutiny by funneling them to and through title agents over whom the Insurance Department has no regulatory authority.

52.    Defendants' conduct constitutes a horizontal agreement to fix the form, structure, and prices of title insurance in New York and constitutes a *per se* violation of § 1 of the Sherman Act.

53.    Defendants' price-fixing activity has been continuous throughout the relevant damages period, and has been renewed and reinforced annually through TIRSA' submissions to the Insurance Department of supposed cost and revenue information and its periodic submissions of rate changes.

54.    Throughout the relevant period, the market for title insurance in New York has been an oligopoly. For example, in 2006, just four Defendants (Fidelity Title, First American, Land America and Stewart) collectively maintained a 92 percent market share in New York.

55.    Through their collective price-fixing and manipulation of the regulatory process, Defendants have harmed competition by charging consumers supracompetitive prices for title insurance in New York.

56.    Absent Defendants' illegal conduct, title purchasers in New York, including Plaintiffs, would have paid significantly less for title insurance and thus suffered monetary damages.

## PAYMENT OF FEES FOR REFERRALS AND FEE-SPLITTING FOR SERVICES NOT ACTUALLY PERFORMED

57.    As alleged herein, Defendants pay title agents commissions that have no relationship to the services these agents perform in securing title insurance. In fact, the majority of costs identified by Defendants in their rate-setting submissions are actually illegal

remuneration for referrals or other payments that have nothing to do with services performed by the title agent.

58.    The kickbacks paid by the title insurers to the title agents and other third parties and the illegal fee-splitting payments for unperformed settlement services are not separately disclosed as settlement fees on borrowers' HUD-1 settlement statements and RESPA Good Faith Estimates, but rather are lumped into the cost of title insurance paid by Plaintiffs and the class members to Defendants.

## CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to certify the following four classes: (1) a class comprised of purchasers of title insurance in New York from Defendants or TIRSA's other members during the period 1991 through the present ("the Antitrust Class"); (2) a class comprised of purchasers of title insurance from Defendants who secured such insurance in connection with a closing on a "federally related mortgage loan" as that term is defined in 12 U.S.C. § 2602(1) (the "RESPA Class"); (3) a class comprised of purchasers of title insurance in New York from Defendants who received deceptive statements concerning their title insurance issued by Defendants (the "GBL § 349 Class") and (4) a class comprised of purchasers of title insurance in New York from Defendants who contributed monetary benefits to Defendants in the form of additional revenue to which Defendants are not, in equity and good conscience, entitled to keep (the "Unjust Enrichment Class").  In addition, Plaintiffs seek to certify the Antitrust Class and the RESPA Class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

60.    Plaintiffs and the members of the Antitrust Class were injured in a similar way –

they each paid supracompetitive prices for title insurance in New York.

61.    Plaintiffs and the members of the RESPA Class were injured in a similar way –
they each paid fees for services which were either prohibited "fee[s], kickback[s] or [other]
thing[s] of value" or were prohibited fee splitting "other than for services actually performed" or
were for "unearned fees" as those terms are defined in 12 U.S.C. §§ 2607(a) & (b) and 24 C.F.R.
§§ 3500.14(b) & (c).

62.    Plaintiffs and the members of the GBL § 349 Class were injured in a similar way
– they each purchased title insurance based on the same deceptive statements and omissions
made by Defendants concerning the nature of their title insurance services.

63.    Plaintiffs and the members of the Unjust Enrichment Class were injured in a
similar way – they paid Defendants an artificially inflated price for title insurance under
circumstances that make it unfair for Defendants to retain this money.

64.    Members of the Antitrust Class, the RESPA Class, the GBL § 349 Class and the
Unjust Enrichment Class are so numerous that their joinder would be impracticable.   Hundreds
of thousands, if not millions, of consumers paid title insurance premiums to insure property
located in New York from 1991 to the present.

65.    Common questions of law and fact exist with respect to all members of the
Antitrust Class and predominate over any questions solely affecting individual Class members,
including:

- Whether Defendants engaged in any alleged illegal price-fixing activity;

- The duration and scope of Defendants' alleged illegal price-fixing activity;

- Whether Defendants' anticompetitive activities have caused Plaintiffs and
  the Antitrust Class members to pay artificially inflated prices for title
  insurance in New York; and

- Whether the Insurance Department exercised, and had the ability to exercise, adequate controls over the industry's cost estimate.

66.    Common questions of law and fact exist with respect to all members of the RESPA Class and predominate over any questions solely affecting individual RESPA Class members, including:

- Whether Defendants provided a "settlement service" as that phrase is defined in 12 U.S.C. § 2602(3) and applicable regulations promulgated thereunder;

- Whether Defendants charged for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan which were either prohibited "fee[s], kickback[s] or [other] thing[s] of value" or were prohibited fee splitting "other than for services actually performed" or were for "unearned fees" as those terms are defined in 12 U.S.C. §§ 2607(a) & (b) and 24 C.F.R. § 3500.14(c); and

- The nature and scope of the illegal fees paid by the Defendants as kickbacks to title agents for referrals and fee splitting with title agents for services that were not actually performed.

67.    Common questions of law and fact exist with respect to all members of the GBL § 349 Class and predominate over any questions solely affecting individual GBL § 349 Class members, including:

- Whether Defendants' statements concerning their title insurance services are materially deceptive insofar as these statements did not describe Defendants' true relationship with title agents;

- Whether Defendants engaged in "consumer oriented" conduct as that term is used in connection with GBL § 349 claims; and

- The nature and scope of the unearned fees charged by the Defendants for kickbacks to title agents and illegal fee splitting for services not performed.

68.    Common questions of law and fact exist with respect to all members of the Unjust Enrichment Class and predominate over any questions solely affecting individual Unjust

Enrichment Class members, including:

- Whether Defendants' secured unearned fees as a result of their relationship with title agents which constituted benefits inequitably obtained to the detriment of Plaintiffs who paid such fees;

- Whether equity demands the imposition of a constructive trust to deprive Defendants of their ill-gotten gains; and

- The amount of restitution necessary to deprive Defendants of their ill-gotten gains.

69.    Plaintiffs' claims are typical of those of all members of the Antitrust Class, the RESPA Class, GBL § 349 Class and Unjust Enrichment Class. Plaintiffs, like all other members of the Antitrust Class, paid the supracompetitive premiums referenced herein. Further, Plaintiffs, like all other members of the RESPA Class, paid illegal fees in connection with a federally related mortgage loans. Plaintiffs, like all other members of the GBL § 349 Class received materially misleading materials from Defendants which included false, misleading and/or deceptive statements about their charges for title insurance. Finally, Plaintiffs, like all other members of the Unjust Enrichment Class contributed benefits in the form of overpayments to Defendants which, in equity and good conscience, Defendants should not be permitted to retain.

70.    Plaintiffs and their counsel are adequate representatives of the Antitrust Class, RESPA Class, GBL § 349 Class and Unjust Enrichment Class. Plaintiffs' interests are perfectly aligned with the classes they seek to represent and they will fairly and adequately represent the interests of such classes. Plaintiffs' counsel are experienced in class action, antitrust and RESPA litigation and are adequate to represent the classes.

71.    This action is superior to any other method for the fair and efficient adjudication of this legal dispute since joinder of all members is not only impracticable, but impossible. The damages suffered by certain members of the Antitrust Class, the RESPA Class and the GBL

§ 349 Class are small in relation to the expense and burden of individual litigation, making it highly impracticable for these class members to seek redress for damages resulting from Defendants' anticompetitive conduct. Further, the harm suffered by the individual members of the Unjust Enrichment Class is similarly small in connection with the expense of litigating their individual claims for restitution, rendering class certification the most superior means of disgorging unjustly obtained revenue into a constructive trust.

72.    Defendants have acted, continued to act, refused to act and continued to refuse to act on grounds generally applicable to the Antitrust and RESPA Classes, thereby making appropriate final injunctive relief with respect to these Classes particularly appropriate.

## FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

73.    Defendants have engaged in fraudulent, misleading and deceptive efforts to conceal the true nature of their unlawful conduct from Plaintiffs and the members of the classes. Defendants have intended to and have in fact accomplished their concealment through misrepresentations and omissions, as described herein.

74.    Included among that deception is Defendants' practice of submitting, through TIRSA, aggregate cost statements which do not identify the manner or amount of their illegal agency commissions. By failing to identify these costs, Defendants compiled their data in a manner that did not reasonably alert Plaintiffs and the members of the classes that Defendants were collectively imposing illegal fees on Plaintiffs and the members of the classes.

75.    Further, Defendants have omitted from their statements and other materials provided to Plaintiffs and the members of the classes payments made to title agents, rendering it difficult, if not impossible for Plaintiffs and the members of the classes to know at the time of the

closing of their loans whether Defendants have engaged in a kickback or fee-splitting scheme.

Defendants have used extraordinary means to evade detection of their scheme including:

- disguising payments made to title agents in the form of "soft money" entertainment and travel, charitable contributions and "Christmas" accounts;

- combining and aggregating data of in-house transactions with those of title agents to obfuscate the costs of referral fees from regulators and consumers; and

- masking payments to title agents as payments for legitimate services when, in fact, such payments are referral fees.

76.     Due to Defendants' fraudulent concealment and because Defendants represent that the unlawful rates are legitimately charged and collected, Plaintiffs and the members of the classes have only recently learned of the existence of her claims against Defendants.

77.     Plaintiffs' and the members of the classes' lack of knowledge as to the claims pled here is not due to any fault or lack of diligence on their part, but rather is attributable to Defendants efforts to conceal and hide the true nature of their unlawful and inequitable conduct.

## FIRST CLAIM FOR RELIEF

### – Against all Defendants –

### (Sherman Act § 1 - *Per Se* Unlawful Horizontal Price-Fixing)

78.     Plaintiffs repeat and reallege each allegation of this Complaint as if fully set forth herein.

79.     Defendants operate their businesses in interstate commerce.

80.     Defendants have entered into a continuing illegal contract, combination, or conspiracy in restraint of trade, the purpose and effect of which is to fix and maintain supracompetitive prices to consumers for title insurance in New York.

81.    Defendants' contract, combination, or conspiracy involves Defendants' efforts and agreement to: (1) collectively fix uniform and supracompetitive rates for title insurance in New York; (2) include in their calculated rates agency commission costs; (3) embed within these costs payoffs, kickbacks, and other charges to title agents that are unrelated to the issuance of title insurance; and (4) hide these supposed costs from regulatory scrutiny by funneling them to and through title agents.

82.    Defendants' contract combination or conspiracy has caused substantial anticompetitive effects in the title insurance market by causing Plaintiffs and the Antitrust Class members to pay significantly more for title insurance than they would have in the absence of Defendants' illegal activity.

83.    As a result of these violations of § 1 of the Sherman Act, Plaintiffs and the Antitrust Class members have been injured in their business and property in an amount not presently known, but which is, at a minimum, hundreds of millions of dollars, prior to trebling.

84.    Such violations and the effects thereof are continuing and will continue unless the Court enjoins Defendants from continuing their conspiracy in restraint of trade.


## SECOND CLAIM FOR RELIEF

### – Against Fidelity Title, First American and Stewart (the "RESPA Defendants") –

### (RESPA – Payment of Kickbacks and
### Undisclosed Fee-Splitting For Services Not Rendered)

85.    Plaintiffs repeat and reallege each allegation of this Complaint as if fully set forth herein.

86.    Plaintiffs and each member of the RESPA Class are "person[s]" as that term is defined in 12 U.S.C. § 2602(5) and applicable regulations promulgated thereunder.

87.    Plaintiffs and each member of the RESPA Class paid title insurance premiums in connection with their closing on "federally related mortgage loans" as that term is defined in 12 U.S.C. § 2602(1) and applicable regulations promulgated thereunder.

88.    Defendants provided "settlement services" to Plaintiffs and each member of the RESPA Class as that phrase is defined in 12 U.S.C. § 2602(3) and applicable regulations promulgated thereunder.

89.    Section 2607(a) of Title 12 of the United States Code states that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

90.    Section 2607(b) of Title 12 of the United States Code states, in pertinent part, that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 24 C.F.R. § 3500.14(c) construes 12 U.S.C. § 2607(b) to also prohibit the charging and collecting of an "unearned fee."

91.    As alleged herein, Defendants paid illegal kickbacks to title agents for referrals and gave fees and other things of value to others for unearned settlement services and settlement services not provided in connection with Plaintiffs and the members of the RESPA Class' purchase of title insurance. These payments are prohibited by RESPA and the federal laws and regulations promulgated thereunder. The vast majority of the agency commissions identified herein which were *sub silentio* imposed by Defendants were in excess of the reasonable value of services provided.

92.     Defendants' acts, practices and conduct constitute *per se* violations of RESPA. Alternatively, even if not *per se* violations, Defendants' acts, practices and conduct violated RESPA.

93.     Plaintiffs and the RESPA Class members have been injured as a result of Defendants' violations of 12 U.S.C. § 2607.

94.     Plaintiffs and the RESPA Class members are entitled to pursue an action and a class action against Defendants pursuant to 12 U.S.C. §§ 2607(d) to redress Defendants' violations of RESPA.

## THIRD CLAIM FOR RELIEF

### – Against Fidelity Title, First American and Stewart (the "GBL Defendants") –

### (GBL § 349 – Deceptive Acts and Practices)

95.     Plaintiffs repeat and reallege each allegation of this Complaint as if fully set forth herein.

96.     Deceptive acts or practices are prohibited by N.Y. GBL § 349, *et seq.* (Consol. 2003), which provides, in pertinent part:

> (a)     Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

> \*     \*     \*

> (h)     In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages

up to one thousand dollars, if the court finds the defendant
willfully or knowingly violated this section.  The court may
award reasonable attorney's fees to a prevailing plaintiff.

97.     The GBL Defendants falsely and deceptively misrepresented or knowingly

omitted, suppressed and/or concealed facts of such materiality regarding the sharing of their fees

for title insurance with title agents.

98.     The GBL Defendants' marketing of title insurance to the GBL § 349 Class

members is "consumer oriented" conduct for purposes of N.Y. GBL § 349.

99.     The GBL Defendants' actions as set forth herein constitute the knowing omission,

suppression or concealment of material facts, made with the intent that others will rely upon such

concealment, suppression, or omission, in connection with the marketing of title insurance, in

violation of New York's GBL § 349.

100.     As a proximate result of these violations of GBL § 349, Plaintiffs and the GBL

Class members have suffered losses that include the difference between the purchase price of the

title insurance they paid and the price they would have paid had the GBL Defendants conformed

their conduct to law.

101.     Alternatively, Plaintiffs and the absent members of the GBL § 349 Class are

entitled to statutory damages.  The Court should increase these damages if the GBL Defendants

are found to have acted wilfully or knowingly in violating GBL § 349, and should assess

reasonable attorney fees in the event Plaintiffs prevail.

## FOURTH CLAIM FOR RELIEF

### – Against Fidelity Title, First American and Stewart
### (the "Unjust Enrichment Defendants") –

### (New York Common Law Governing Unjust Enrichment)

102.    Plaintiffs repeat and reallege each prior allegation contained in this Complaint as if fully set forth herein.

103.    The Unjust Enrichment Defendants have benefitted from the revenue they were able to generate for title insurance premiums, as a result of the acts alleged in this Complaint.

104.    Plaintiffs and the Unjust Enrichment Class members have conferred upon the Unjust Enrichment Defendants an economic benefit in the nature of revenue resulting from overpayments made for title insurance during the relevant period, to Plaintiffs' and the Unjust Enrichment Class members' economic detriment.

105.    The economic benefit of payments made by the unjust enrichment class members is a direct and proximate cause of the Unjust Enrichment Defendants' inequitable and illegal conduct, as set forth above.

106.    The benefit held by the Unjust Enrichment Defendants rightfully belongs to Plaintiffs and the Unjust Enrichment Class members, as they paid these sums to the Unjust Enrichment Defendants during the Class Period, when the Unjust Enrichment Defendants were using inequitable measures to increase title insurance premiums paid in New York.

107.    It would be inequitable for the Unjust Enrichment Defendants to be permitted to retain the proceeds of their unlawful acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.     That this Court declare, adjudge, and decree that Defendants have violated the

Sherman Act, RESPA, GBL § 349 and New York's common law of unjust enrichment;

B.     That Defendants, their directors, officers, employees, agents, successors, and

assigns be permanently enjoined and restrained from, unlawfully fixing or maintaining their title

insurance rates at supracompetitive levels, and committing any other violations of § 1 of the

Sherman Act and RESPA;

C.     That this Court award treble damages sustained by Plaintiffs and the Antitrust

Class members as a result of Defendants' violation of § 1 of the Sherman Act, plus interest

(including prejudgment interest), to compensate them for the overcharges they incurred;

D.     That this Court award Plaintiffs, the Antitrust Class members and GBL § 349

Class members attorneys' fees and costs of suit;

E.     That this Court award Plaintiffs and the RESPA Class members "three times the

amount of any charge paid" for the unearned settlement services referenced herein, plus

attorneys' fees and costs. 12 U.S.C. § 2607(d);

F.     That this Court award Plaintiffs and the GBL § 349 Class members their actual

damages or $50.00, whichever is greater and increase this award pursuant to GBL § 349(h);

G.     That this Court impose a constructive trust on that portion of Defendants' assets

that represents the amount of overcharges Defendants obtained inequitably from Plaintiffs and

the Unjust Enrichment Class members and allow restitution from such trust; and

H.     That this Court award any other and further relief it deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated: White Plains, New York
        July 9, 2008

LOWEY DANNENBERG COHEN & HART, P.C.

By: _____

        Barbara Hart (BH-3231)
        Peter D. St. Phillip, Jr. (PS-0726)
        Vincent Briganti (VB-1497)
        Scott V. Papp (SP-6005)
One North Broadway, Suite 509
White Plains, New York  10601
Telephone:    (914) 997-0500
Facsimile:    (914) 997-0035
Email:        bhart@lowey.com
              pstphillip@lowey.com
              vbriganti@lowey.com

*Attorneys for Plaintiffs, Gerry Galiano, Gary
Kromer, Monique Kromer, Joseph Ammarati,
Michelle Ammarati and Susan M. Marotta*


WHALEN & TUSA, P.C.

By: _____

        Joseph S. Tusa (JT-9390)
        Paul C. Whalen (PW-1300)
        33 West 19th Street, Fourth Floor
New York, New York 10011
Telephone (212) 400-7100
Facsimile: (212) 658-9685
joseph@whalen-tusa.com
paul@whalen-tusa.com

*Attorneys for Plaintiff Vincent Trulli*

FARUQI & FARUQI, LLP

By: _Antonio Vozzolo w/ permission/PSF_

Antonio Vozzolo (AV- 8773)
369 Lexington Avenue
Tenth Floor
New York, New York 10017
Telephone: (212) 983-9300
Facsimile: (212) 983-9331
avozzolo@faruqilaw.com

*Attorneys for Plaintiffs Stephen J. Phelan,*
*and Michael Martinucci*


SALZ MONGELUZZI BARRETT &
    BENDESKY, P.C.
        David J. Cohen
1650 Market Street
52nd Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 575-3985
Facsimile: (215) 575-3894
dcohen@smbb.com

*Attorneys for Plaintiff Stephen J. Phelan*


SQUITIERI & FEARON, LLP

By: _Lee Squitieri w/ permission/PSF_

Lee Squitieri (LS-1864)
32 East 57th Street
Twelfth Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

*Attorneys for Plaintiff Peter Miley*

WEXLER TORISEVA WALLACE LLP
    Kenneth A. Wexler
    Edward A. Wallace
    Amber M. Nesbitt
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 589-6271
kaw@wtwlaw.com

*Attorneys for Peter Miley*


BERMAN DeVALERIO PEASE TABACCO
  BURT & PUCILLO
    Joseph J. Tabacco, Jr.
    Todd A. Seaver
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
tseaver@bermanesq.com

*Attorneys for Susan M. Marotta*

2123 / CMP / 00089680.WPD v1